in 6085 Lane v. Progressive Northern. And please let us know if you're having any problems hearing us. Actually, your court staff has been just remarkably helpful. They're good people, aren't they? They really are. They've really done a great job of seeing how I got taken care of. But if things don't quite work... I understand. Thank you. I appreciate that. I'm Rex Travis. I'm here on behalf of the two young women who were badly injured when they were passengers in a car insured by Progressive Northern that went out of control and overturned and badly injured them. Progressive had 100,000... Would you speak up a little more? I can see the opposing counsel is having trouble hearing you. Okay. The... You can move the mic closer to you. Right. The vehicle had 100-300 policy limits with Progressive, both liability and uninsured and underinsured motorist coverage. Progressive paid the 100,000 because it was uninsured or underinsured motorist coverage on the basis of a policy provision which said that if they pay as much as $25,000, the minimum compulsory insurance law limit under Oklahoma law, under the liability, then the occupant of the vehicle is not entitled to uninsured motorist coverage. Counsel, you need to speak up just a little bit more because I'm watching the opposing counsel and she cannot hear you. Okay. I will certainly undertake to do that. More than thirty years ago, this court decided this issue in this case in Russell versus American States Insurance Company. We cite and discuss that case at some length between pages 9 and 11 of our brief in chief. The position, as I understand it, that Progressive takes is that those cases, this court's Russell decision and the several Oklahoma state Supreme Court decisions upon which it is based, are cast into doubt by basically two cases, Heartline versus Heartline and Ball versus Wilshire. What they do not take into account is that Heartline versus Heartline is not an uninsured motorist case. It is a case involving the compulsory insurance law in Oklahoma and that is a law which concerns itself solely with the requirement that a motor vehicle policy provide liability coverage in an amount now $25,000 per person, $50,000 for all persons injured in a particular wreck. Heartline is simply not an uninsured motorist case. The uninsured motorist cases, this court's Russell decision and the cases upon which it is based are rather based on the Title 36 Oklahoma statutes, Section 3636, our uninsured motorist statute. That statute does not require that we provide 25 over 50 coverage, $25,000 per person, $50,000 for all persons injured, but that the insurance company is required to offer and write coverage unless it is rejected in an amount equal to the liability limit, which in this case was $100,000 over $300,000. Heartline is simply not pertinent to this case. They also cite Ball versus Wilshire insurance company. That seems to be the second case upon which they rely. Ball versus Wilshire also did not involve uninsured motorist coverage. It was a liability case. In Ball versus Wilshire, the insurance company actually paid their uninsured motorist coverage. In fact, because a case came down while Ball versus Wilshire was pending, then they actually paid more perhaps than they actually owed. The throwaway line of obiter dictum in Ball versus Wilshire upon which they rely is that the court says we don't have a very good definition of what's permitted and what's not permitted in excluding uninsured motorist coverage in this case. Note 77, if you would take a look at that, in Ball versus Wilshire actually speaks to that and it is itself almost a throwaway line. That note reads in its entirety, our conclusion that the law stands unsettled is limited to the facts presented in the Tenth Circuit's certification order because Ball was a case involving a question certified to the Oakland Supreme Court by this court. What the court was saying is that because the facts that they had before them were limited to the facts that this court included in the Ball case in the certification order, that was why they were unclear what the exact parameters were of a permissible exclusion from uninsured or underinsured motorist coverage. What's happened over the years is the Oklahoma legislature has amended 36 Oklahoma statute section 3636 to provide among other things for some permissible exclusions. This is simply not one of them. What the Oklahoma State Court cases say and what Russell says is that when the uninsured motorist statute prescribes what is an underinsured vehicle, which is to say uninsured under Oklahoma law, that if the company writes an exclusionary provision which modifies that and which takes away some of the coverage that the statute requires be offered and written unless it is rejected, then that exclusion is void. I think this case in a nutshell. We also sued for bad faith on the theory that the insurance company should not have left in this or put in this policy a provision that earlier cases had declared invalid because they're contrary to public policy. I will be very candid with the court and suggest to you that I think I have a very tough road to hoe making a bad faith case out of this simply because of the circumstance that we have two very good and very well respected district judges in the western district, Judge Friant who decided the Stone case, this case that's before the court now, and then the chief judge in the district who ruled in our favor. I happen to have been involved in that case as well as I think was my opponent's firm. Those two district judges both differed greatly. Judge Goldoff. Counsel, you've gotten to the heart of what's really in the back of my mind. It's bothering me somewhat. Did you just say that both your opposing counsel and you are the counsel in the other case in which the result was just the opposite? Judge Goldoff, I am in that case. My opposing counsel has had a recent realignment of lawyers and as a result, I'm not completely sure that her present firm was involved in that. I'm sure she can address that well. Let me ask you this. You both have asked for certification to the Oklahoma Supreme Court or you did not? What is this? I didn't object strongly. Oh, okay. Didn't object strongly. All right. You asked for cert. She didn't object strongly. Now, you agree that this is a diversity case? I do. It involves an Oklahoma statute and also involving public policy, right? I do. Well, then it's our obligation to divine what we think the Oklahoma Supreme Court would ultimately do with these arguments in this statute. You agree with that? I agree that you have that option but you also have the option to defer those public policy issues to the Oklahoma Supreme Court. By certification. By certification. The Eureka Springs Hotel case that this court decided just a few years ago said you really ought to do that. Let me tell you what my concern is. Years ago when I was a younger judge on this court, I divined what the Oklahoma Supreme Court was going to do and two years later they told me my divination was not worth a hill of beans so they went just the opposite way and that created more litigation. They're more educated about that now. I appreciate that because we have two cases now and I think you both agree we have two cases now in the Tenth Circuit that involve identical issues with one federal district court judge saying holding in your favor and the other one saying just the opposite that you love. Two highly respected judges. I know both. All right, well you . . . Let me ask you this question then. Different state high courts have different attitudes about certification but issues involving uninsured motorist protection have been accepted for certification from this court by the Oklahoma Supreme Court in the past. Is that correct? Yes. You've incited one here. Exactly. Okay. So you wouldn't expect them to be hostile to our certification? I think I can almost guarantee you that the Oklahoma Supreme Court would not be hostile. They're very good about promptly responding to requests. Counsel, can I just jump in here? So is your position that we could decide this case though based on Russell and your position is that Russell controls the case? What do we do with Russell, I guess? Judge, my position is that as I understand it, Russell is the controlling authority in the circuit unless until it is overturned in the circuit or the Supreme Court unequivocally expresses the opinion, as Judge Baldock has suggested they sometimes do, that Russell is not the law. I think the court could follow Russell and be entirely justified in doing so. Well, isn't that what the judge did in the other case? In Russell? No, in the other case. Not this case, but in the other case. Almost exactly the same thing. I represent a young woman in that case who was a high school student as these kids were. They're out riding in the car with a little girl whose parents were insured by, and I don't think that was progressive. I think that was Geico, which this firm also represented, maybe still does. I'm unclear because of their realignment of lawyers, but that was exactly the same issue. They declined to pay uninsured motorist coverage because they had paid liability. Well, the Oklahoma statute says if those liability limits are not as great as the claim, the amount of the claim, and they're clearly not here in either of these two cases, they're supposed to pay it. Then they did not do that. With that, I'm going to turn it over to my opponent and save a couple of minutes to respond. Thank you. Good morning, Your Honors. Dawn Garris for Progressive Northern, and with respect to the other case that we've been referencing, which is McKinney, it's 19-6127. Progressive Direct is the other insurer in that. I am representing Progressive in both of those cases. The underlying facts are almost identical, and the language of the policy is identical in both policies. Of course, best laid plans are great until you actually hit the battle lines. I was going to start with some prepared remarks, but instead, since we've started with discussing the potential of certification, I would like to address that if you don't mind, Your Honors. As Your Honor knows, Your Honor crafted the question to be submitted to the Oklahoma Supreme Court in Ball. With respect to in the event the court decides to certify this matter and this issue, I would say that the language of the certification issue that I proposed in the response to the appellants is somewhat broader than it perhaps should be. There are a couple of issues, and I'll wrap back around to if you certify, the issues I think should go to the Oklahoma Supreme Court. Well, they have inherent power to restate the issues anyway. Yes, Your Honor. Yes, absolutely they do, and they have often. But I guess I'd like to keep it kind of focused on the legal issues and the statutory interpretation and application that is in play here. The facts are undisputed. There is no question. The injured parties, very sadly. Lane and Stone, minor children who were Class II insured, and Class II is important. Them being Class II insured is why Heartline is important. Progressive is not relying on the rationale of Heartline and recognizes that the Heartline decision did, in fact, interpret a family member liability exclusion. It was not the same as UM. And, in fact, in Heartline, the injured party's husband had rejected UM. So Heartline, Progressive completely understands, was about liability insurance. However, Justice Apollo, who was the author of the Heartline decision, recognized at that time that there was an increasingly integrated interplay between insurance, liability insurance, automobile, and UM insurance. And in two other cases, Mr. Travis referenced Heartline and Ball. There's a third case that is important, very important, and that's May versus National Union. May versus National Union, which is the 1996 case, which determined that when an insurance company fails to offer UM, that the amount that's imputed when a UM, and this is the language that Justice Apollo in that decision decided, when an insurance company transgresses the UM statute, because there is no judicially or legislatively crafted fix for when an insurance company does not abide by the statute. That is not included in 3636. And because of that, the May court determined that if an insurance company failed to offer UM, thereby transgressing the statute, the fix was to provide 2550 at this time, which is the statutory minimum liability limits. They provide UM in an amount equal to the statutorily mandated minimum liability limits. And in fact, in May, what the court said is that it is the intent and the purpose of UM coverage to provide UM coverage in that amount, the statutorily mandated minimum. Now, that's all important because progressives' policy and the way it's written does what, on the liability side, it's perfectly permitted to do. And that is it excludes liability coverage for named insureds, Class I insureds, the people who bought the policy. The people who bought the policy and the people who live with them under Heartline can be excluded from recovering any liability insurance as long as they get a minimum of 25 from UM. What the Heartline decision said is we don't care where it comes from. We don't care. We don't care if it's liability. We don't care if it's UM. What we care about is that you can have this exclusion, but it's only valid in excess of the statutorily mandated minimums. So what progressive did with respect to liability coverage was it says if you, as a Class I insured, named insured or resident relative, someone who bought the policy or is a relative of the person who bought the policy, if you're injured in a liability situation where you're the passenger and the driver, you don't get liability coverage in excess of 25. It also goes on to say if you've bought UM coverage, you get the full amount of UM coverage. We're just going to handle it like a liability claim because what progressive did when it drafted its policy was it understood that the person driving the car is an insured too. And so what they do is if I bought a policy with progressive and I've got 100-300 just like in this case, 100 per person, 300 per accident, under the progressive policy if I bought it and I was riding as a passenger and I was injured, what happens is I get the full limit of UM coverage that I paid for. I get $100,000 for my injuries, but they're going to handle it like a UM claim because then they can get a release for the driver who's also an insured. Other insurance companies do it differently. Other insurance companies, what they do is they say if you've bought UM, you don't get liability, you just get it as UM and we're going to handle it as UM. The reason that that's important is because the proposition that the plaintiff stands for here and that the appellant wants the court to accept is that a class 2 insured who paid nothing for the policy is entitled to more coverage than a class 1 insured who did. His position is that Lane and Stone, who are only covered under the UM provision of the progressive policy because they were passengers in that vehicle, they, according to him, get both the liability and the UM. When the class 1 insured doesn't. The person who bought the policy, if they're injured in a single vehicle accident or an accident where they get liability under the policy and they're both able to get liability coverage and they're a UM insured, they don't get both and that's perfectly acceptable under Oklahoma law. That's why Heartline's important. If this was a class 1 insured who stood in the shoes of Lane or Stone, there wouldn't be an argument. It would be perfectly fine under Oklahoma law because the class 1 insured would get the benefit of the UM they purchased but they would get it handled as a liability coverage and they'd get no liability coverage. They would only get one of these. Now, there's some concern. Does that mean they paid two premiums? Well, first of all, Lane and Stone didn't pay any premiums and Lane and Stone want this exclusion to be deemed invalid because it violates public policy. Well, under Oklahoma law, public policy as a rationale for invalidating a contract provision only applies in situations where it clearly tends to injure public health and I'm doing this because I don't want to paraphrase this. Morals or confidence in the administration of law or if it undermines the security of individual rights with respect to either personal liberty or private property. The plaintiffs in this case are class 2 insureds who didn't pay anything for the premium. So the question is, does the public policy of UM under, are their individual rights larger than the person who purchased the policy? Well, can I just stop you there? Yes, ma'am. I appreciate what you're saying but how does that relate to certification? Your position on certification. That brings me back around. Yes, your honor. That brings me back around to if this is going to be certified. The language that I had used in my response I believe is a little broad. What I believe that the Supreme Court should focus on is two things. One, with respect to a class 2 insured, and as the Oklahoma Supreme Court pointed out in Ball, there's some flexibility with respect to class 2 insureds in terms of some gray area as to what they're entitled to. So number one, does 3636 and the public policy embodied by that statute require that a class 2 insured be afforded more coverage than a class 1 insured would be entitled to? And that's what's being asked to happen here. And number two, under the very specific facts of this case in which Lane and Stone not only received $100,000 from liability, both of them also had recovery under their own UM purchased by their parents, but they both had UM coverage from their own policies. And because of that, they not only recovered four times the minimum amount, which is what May says the purpose of 3636 is. The purpose of 3636 is to ensure that someone receives at least the statutory minimum. Mr. Travis said that under that statute, they have to be given UM in the amount that matches the liability insurance, and that's just not the case. Okay, so let me jump in. Yes, Your Honor. Do you think that that is a question that we as the Tenth Circuit should be deciding instead of? You're focusing on how the question is framed, I guess. But I just am wondering your basic position on whether the case should be certified, or if you think we should decide the questions that you're posing. I think you can decide it. Okay, so maybe you can help. I think you can decide it because here's why. I think you can decide it because the exclusion, Exclusion 6 of the UM, which does preclude Lane and Stone from recovering UM coverage under the policy. That does not violate the public policy of 3636, and the body of law that we've relied upon makes that clear. It makes it clear because, number one, under Heartline, a Class 1 insured would only be permitted to recover one of them. As such, a Class 2 insured, there is nothing in 3636 that indicates that a Class 2 insured should be entitled to more coverage than a Class 1 insured. So the answer, I guess, if we decided this case that you would want, is that the public policy of Oklahoma could not favor giving a Class 2 insured more coverage than a Class 1. Yes, Your Honor. Absolutely. And the other thing I would point out is that in our briefs, it wasn't as hit as much an argument. There's a lot of discussion, number one, about the premium. I think premium is a red herring because these people didn't pay a premium. And it's only in very rare situations where this exclusion comes into play. All right? Number two, while the public policy of liability insurance has been articulated very clearly to say it's for the innocent injured party and UM insurance is slightly different, they're both geared towards the same thing, and that's protecting the innocent injured party with coverage that has been made available. To suggest that 3636 does not allow exclusions unless they're articulated in the statute makes no sense because, in fact, there have been many exclusions permitted by the Oklahoma Supreme Court before any were codified. Now, I think Judge Friant hit that very well when he pointed out 3636H, which was added in 1990, is the format that insurance companies are supposed to follow when they offer UM, and that clearly anticipates that UM may not be available. There will be exclusions. In this case, public policy is not offended because nobody who bought the contract is being precluded from benefits, and they . . . Yes? That's your opinion. I'm looking at this from more of a judicial economy standpoint because we can try to answer the question you're asking. The problem is you've got another case identical, and that court should decide, no, we're going to certify this issue. So we've gone in and we've decided the issue, and the Oklahoma court says that this panel is all wet, that it does involve public policy. That seems to me like a whole waste of judicial economy for us to spend the time to do all that or another court to spend all the time on that, and the Oklahoma court having the final say. Under the case law, the only reason that I objected, Your Honor, is it would have been nice to have briefed this, and under the case law of the Tenth Circuit, you're not supposed to get to ask for certification unless you did it at the underlying court. I would have liked to have been able to clarify and brief and narrow the issue that I would like for the issues that the Supreme Court should consider. You didn't do that in this case? There was no request for certification at the trial court level. I know, but to support your position, you didn't argue this in your brief. I thought you did. Oh, yes, it's there. So if the briefs both cover the subject, then you're going to have your wish anyway. And for purposes of submitting it, if it is certified, I would ask that the very specific facts of this, does this exclusion violate the public policy of 3636 under the specific facts of where Class II insureds who recovered the full liability limit and UM from their own coverage? Thank you, Your Honor. I want to ask a question because this comes up repeatedly and I don't understand why our precedent says that the fact that you didn't ask for certification below precludes you here. So could you tell me why you did not seek certification in the district court? Honestly, with respect to this case, I can say that I wasn't certain we were going to win at the 12C level. We won at such an early, we may have at a later phase. But thank you, Your Honor. So you have two minutes. Thank you, Your Honor. The Oklahoma Supreme Court has made itself very clear. On page six of our brief, we quote Brown versus USAA quote, it is settled in Oklahoma that insurance policy provisions and definitions which purport to condition, limit, or dilute the provisions of the uninsured motor statute are void and unenforceable. That's not been somehow repealed or amended. This thing about the named insured getting less coverage than the passenger is a red herring. If they get less coverage, it's because they had the bad judgment to buy that liability, not the UN, but the liability coverage from a company like Progressive, which has an exclusion that applies to their named insured. I insure with USAA because I'm retired from the Air Force. And I have children and I have grandchildren. And their friends ride in my car. And I don't think I'm paying those premiums on my policy so that those children riding in my car can be denied coverage because this company didn't follow that language we just quoted from Brown. Judge Ida, I think if you decide it, you need to decide to follow Russell and Brown. If you decide to certify it, so be it. Thank you. Thank you. That was fun. Case is submitted. Counsel are excused.